The next case today is James Harper v. Charles P. Rettig, et al., appeal number 21-1316. Attorney Samp, please introduce yourself for the record and proceed with your argument. May it please the court, my name is Richard Samp. I represent the appellant James Harper. I would ask that I be permitted three minutes of rebuttal, if that's permissible. Yes, that's fine, Mr. Samp. Your Honors, the principal issue on this appeal involves the Anti-Injunction Act. Whether or not the Anti-Injunction Act deprives this court of jurisdiction to hear the statutory claims and the constitutional claims that my client has brought against the Internal Revenue Service. There also is a claim by the Internal Revenue Service that the complaint fails to state a cause of action. That 12b-6 issue was not addressed by the district court. And while, of course, it is within this court's power to address an issue that was not addressed by the district court. This court's usual practice is to, if it reverses on the issue that the district court addressed, to remand to the district court in the first instance to allow the district court to address issues that it did not previously address. And I'm prepared to argue all of the issues today. But our preference, given that the briefing so heavily focused on the Anti-Injunction Act, my request is that we just today address the Anti-Injunction Act. At the time that the district court held that there was no jurisdiction in this case, the Supreme Court had not yet issued its decision in CIC Services versus IRS. That decision essentially makes this an a fortiori case. The government in its brief attempt to distinguish the CIC Services case, but to the extent that there are any factual differences whatsoever between the two cases, they all run to our benefit. The facts were much stronger for the IRS in the CIC case than they are here. In particular, the Anti-Injunction Act says that any suit is barred if brought for the purpose of restraining assessment or collection of tax. My client does not intend to try to prevent the assessment or collection of any tax. He admits that he, like every other taxpayer, is required to report and pay all of his taxes. He would not object to the IRS asking him for information if it believes that it wants that information. However, in this particular case, he objects to the information-gathering process of the IRS. And that's exactly what CIC Services said, that the IRS is not, that taxpayers are not barred from attempting to prevent or to object to information-gathering processes of the Internal Revenue Service. And it made a very clear distinction between information-gathering processes, which it said were not barred, and efforts to prevent assessment and collection of taxes, which are barred. The case in CIC was significantly closer because in CIC, the particular information that the IRS was seeking had to do with what was called micro-captive transactions. And there was a law that says… Counsel, let me ask you this question. I hope this will be helpful to me. You are challenging, and I know this goes to the merits, but inescapably this relates to the subject matter jurisdiction issue. You're challenging the way in which the IRS uses sections 7602 and 7609. I would like you to explain how those statutes relate to the ability of the IRS to assess the taxes that they think may be due to the kind of transactions that your client is engaged in. I ask that because those provisions seem to go far beyond the kind of information-gathering the court said in CIC probably does not implicate the Anti-Injunction Act. Those statutes seem, in the way in which they are used, to be very, very close, much closer to assessment than information-gathering. So it would be helpful for me to understand how those statutes relate to the assessment of tax liability. 7609F, which is the principal statute at issue here, was a statute adopted by Congress in 1976 for the express purpose of preventing fishing expeditions of the type that the IRS is engaged in here. What it said was that if the IRS doesn't know the identity of a particular taxpayer, but it wants to nonetheless gather information about these unknown taxpayers, it can go to the court and ask for a summons if it can meet some very stringent requirements. Among them, it needs to show that it either suspects that the individual taxpayer, if it has a reasonable basis for believing that the individual taxpayer has not paid his taxes, or he is part of a large group or a group that has failed to pay its taxes. And that's essentially what happened here. The IRS went on a fishing expedition for hundreds of thousands of customers of a company by the name of Coinbase and said, Coinbase, turn over all of your records. Now that, to me, doesn't sound very close at all to the assessment and collection of taxes. That sounds to me totally like an information-gathering effort. Now, unlike this case, in the CIC case, it did involve the collection of tax in a very direct sense because in that case, they said, turn over these reports about microcraftive transactions. If you don't turn that information over, you owe a tax. And that was the basis of the IRS saying that the Anti-Injunction Act applied. What the IRS said was, really, the failure to provide this information is the flip side of a tax because there is a tax imposed if you don't provide the information. Here, nobody has ever argued that Mr. Harper has failed to report all of his income. And, in fact, the letter that was sent to Mr. Harper in 2019 by the IRS simply said that we have collected some information about you and we think maybe you didn't provide all of your taxes. That was two and a half years ago. He has not heard word to from the IRS since then. You would think that if the IRS had some reason that it was investigating here, if it had some reason to assess or collect, it would have turned to Mr. Harper and said, turn over some information. Of course, we don't know what information it has. We have not gotten to discovery. All we know is that it asked for a massive amount of information from Coinbase. The judge who heard the effort to enforce that summons said this is way too broad and it found that the IRS requirements for enforcing summons had been exceeded and it cut back on what could be provided. In this case, there has been no effort to try to assess and collect any tax. For that reason, there really is no direct connection. Let me ask you, counsel, a question. The information that was obtained from Coinbase regarding your client by the IRS, is that his entire tax situation? I mean information or is that just whatever Coinbase had and he has other tax information elsewhere that is not there? Well, we don't know what they collected. He also had an account with a company by the name of Abra and we suspect but don't know that they requested the same information from Abra that they requested from Coinbase. However, there is no record of any court case filed against Abra by the IRS. For all we know, there was a massive amount of information provided from Abra as well. The only way we know at all that in fact the IRS did get information about Mr. Harper was that they sent him a letter in August of 2019, a warning letter saying you better pay all your taxes otherwise you might be liable for civil or criminal liability. We know, however, that that letter was not based on any particular study of his tax returns because they simultaneously issued a press release which is on pages 70 and 71 of the appendix. In the press release, they basically said, oh, these warning letters, well, they were just educational letters and they were form letters that were sent to thousands of taxpayers who one way or the other, whether from Coinbase or Abra or from both, that the IRS said we want to give them educational information that might inform them to go ahead and amend their tax returns. Counsel, how about section 7602A? You discussed section 7609. What about, how does that, I mean that statute by three terms suggests that it may be very much related to the assessment of taxes as opposed to information gathering. How do you respond to the involvement of that statute? Well, 7609A really has very little at all to do in the context of John Doe sentences anyway. 7602A, isn't that also involved in your challenge? We don't challenge any statute. We just think that the IRS has failed to comply with 7609F. We don't invoke, we don't claim that there has been a violation of 7602A. 7602A permits the IRS to try to enforce summonses against the person who has the documents. That might be the taxpayer or it might be a third party such as Coinbase. And under 7602, if the information is sought from a company such as Coinbase and the IRS wants to also get information about a specific taxpayer, it must provide notice to the taxpayer and allow that taxpayer to intervene if he wants to. However, in the case of John Doe summonses, that's when 7609F kicks in because, of course, they can't be given notice because their identity is unknown. And that's what we think was violated in this particular case was that they did not comply with the requirements of 7609F. In particular, 7609F requires that in addition to having a reasonable suspicion of violation of the law, it also requires that the IRS make its request narrowly tailored and it may not seek information that it could obtain elsewhere. One very easy, narrowly tailored thing that they could have done would have been to ask Coinbase for the names and addresses of taxpayers, at which point they could then have compared the names and addresses to the tax returns for Mr. Harper and others that are on file and see if, in fact, they had been regularly reporting their capital gains transactions on Bitcoin. Instead, they didn't do that. They just said, let's go on a phishing expedition. Let's ask Coinbase to provide information about hundreds of thousands of taxpayers. And while they claim that, well, we had a suspicion that some customers of Bitcoin were not reporting their transactions, that is not sufficient to have reasonable suspicion that Mr. Harper himself did not comply with the tax laws. As a matter of fact, in the case of the United States v. Ritchie, which the government cites in its brief as do we, the court said that the mere fact, for example, that an anonymous taxpayer does business with a criminal defense firm is not enough for the IRS to think, well, maybe that person isn't paying his taxes and that's why he is consulting with a criminal defense firm. Are there any other questions for Mr. Samp? Thank you. Thank you, Mr. Samp. Thank you. Mr. Samp, at this time, please mute your audio and video. And Attorney Lyon, please introduce yourself on the record to begin. Thank you, Your Honor, and may it please the court. My name is Kathleen Lyon and I represent Commissioner Rettig and the IRS. As opposing counsel has noted, the chief or primary issue in this case is whether the district court had jurisdiction over his suit or whether the Anti-Injunction Act bars the suit. Our position is that the Anti-Injunction Act does bar the suit because this is plainly a tax suit aimed at restraining assessment and collection and the taxpayer has not shown that an exception applies. I would like to address some of the things that have been discussed. Yeah, if I can just start there. First, with respect to the question about the information gathering process that was at issue in CIC, we do think that that is different from the information gathering that was happening here under the John Doe summons. The information gathering process that was discussed in CIC was an affirmative Terribly sorry. Terribly sorry. The information gathering in CIC services related to an information reporting obligation, a third party information reporting obligation where they were supposed to report information about other taxpayers and that created compliance costs and burdens and the focus of that suit, the purpose of that suit was to get out from under those economic burdens. The information gathering here is pursuant to a legitimate tax investigation that was underway in Coinbase and the Coinbase court found that it was a legitimate tax investigation and in this case, the taxpayer's liabilities are at issue. He reported gains and losses from his Bitcoin or other digital currency transactions and that fed into the liability that he reported on his return. The IRS has obtained information that it believes indicates that he may not have reported that correctly and it informed him about that and we think that that makes this an entirely different context from CIC services. I would also note with respect to 7609F, as we've explained in the 12B6 portion of our brief, 7609 doesn't allow him to bring a claim under that section of the code and he and nobody else can challenge what happened in the ex parte proceeding. 7609 just doesn't offer that option and in any event, on the face of the complaint, the complaint shows that the IRS has complied with all procedures under 7609F. It went to a district court and got the ex parte order and the district court said, okay, you've shown me, you've met these three factors, you can go issue this summons to Coinbase. It issued the summons to Coinbase, Coinbase declined to comply and then the IRS sought an enforcement proceeding and that is exactly what is supposed to happen. He hasn't identified any procedures that the IRS has not followed. One other point I want to raise. I'm looking at language from CIC itself, which is really where the court is sort of summarizing the state of the law in this area. The court says that the Anti-Injunction Act, and this is the line which I want to ask you about, it says it is keyed to the act of assessment and collection themselves, keyed to the act of assessment and collection themselves. In what way is the act of assessment implicated here in such a way that the Anti-Injunction Act should apply? I think we are not involved with an act of assessment, we are involved with perhaps preludes to an act of assessment, but not to the act of assessment itself. How do you deal with that seemingly very clear language in CIC that suggests that your position is not defensible? Your Honor, we don't think that CIC stands for the proposition that anything short of the ministerial act of assessment or that moment of assessment is fair game. If it were, then I think CIC services would have been a much shorter opinion because what was at issue there wasn't even close to a determination, which is the last thing that happens before an assessment. Instead, CIC services, the Supreme Court, engaged in a pretty nuanced analysis to determine whether the suit was actually a tax action in disguise and just how close the notice that was being challenged in that suit was to an actual tax liability. The Supreme Court also said in the opinion that its holding does not apply to suits seeking to foreclose a tax liability, and this is what we think is happening here. Yes, Ms. Lyons. What you just said about CIC, it seems to me that the Supreme Court itself said it would have been a cinch case, just as you say, if it didn't involve the tax penalty aspect of it, and don't we now have the cinch case? We have the IRS out seeking to get information from the third party with no tax penalty associated with it. That sounds like the cinch case that the court was referring to. I don't think that's how we see it. We think that this is plainly a suit about taxes and CIC was not. The information that was gathered was part of a legitimate tax investigation that was underway. Nothing in CIC's services suggests that that opinion applies to IRS tax investigations or someone's issued in support of it. There's been no assessment, has there? No, there's not been an assessment. There's nothing the taxpayer could challenge now. That's correct. He would have to wait, and he has remedies if the IRS does assess a penalty. I don't know of any case law that says the IRS has to guarantee that it will assess in order for a taxpayer to be deemed to have... Your Honor, if what you're saying is essentially... I think the commonality between your example and his suit is that essentially his suit is akin to a motion to suppress. I don't think there's anything unusual about saying that in the motion to suppress kind of context, you usually have to wait until the government uses the information against you before you can challenge it. That's just granted a conceptual level, but I think that the Anti-Injunction Act works to keep people from shutting down the IRS for making that determination of tax liability, and that's what he's trying to do here. The information at Coinbase or whatever other digital exchange he thinks the IRS got information from is the same information that he would have relied on when filling out his returns, and he's trying to force the IRS to destroy that information. It sounds like what the IRS was doing was out, understandably, with perhaps reason, trying to gather information so it could determine whether or not to assess him. Right, to determine whether their additional taxes were due. Right, so it hadn't yet even decided to assess him. Correct, but we're not talking about the moment that the summons issued to Coinbase or the moment that that was enforced in November 2017. We're talking about what he's trying to do in this suit now, which is to keep the IRS from relying on presumably the same information he would have had to rely on to report those gains and losses on his taxes. I'm trying to train your attention back on Judge Lopez's point regarding that our focus under the Anti-Injunction Act is on assessment or collection, and since it sounds like they hadn't even decided whether to assess, they were just gathering information that would assist them in that decision. I'm not understanding your response to Judge Lopez. Well, perhaps I'm not understanding. I understand you to be talking about the summons that was issued to Coinbase and whether that itself was information gathering at that time. What we're talking about is the IRS has information that it believes shows that he may have not reported correctly and may face additional taxes. And that's the same information that he relied on, presumably to report his gains and the overall liability on his tax return. So that liability is at issue, and that's where we're at right now. Counsel, it seems to me, and again, the language in CIC seems to address this. The IRS understandably wants to get this information to down the road facilitate the assessment and collection of taxes. But in CIC, the court again says, even if that's true, if it will facilitate the assessment and collection, that does not implicate the Anti-Injunction Act. It's more akin, again, to information gathering than it is to assessment or collection. And if that's the case, the AIA does not apply. I mean, that's a pretty clear language in CIC itself, isn't it? Well, I think in CIC, one of the things the Supreme Court was determining in that case was whether this was a tax action in disguise. And it noted three factors at page 1591, 1592. And one of those factors was whether CIC was close to the cusp of liability. Not necessarily assessment, but liability. And so it just saw that the suit in CIC was over here and liability was far down the line. And we think that this is much closer to that point, that cusp of liability, than CIC was. And so we do see these cases as very, very different and arising in a different context. Could you give us a practical example? Let's assume, and I know you're arguing against it, but let's assume that we find that CICS applies here and controls this case. Would we be creating any practical problems for the IRS that CIC itself does not create? Well, if this court were to find that the Anti-Injunction Act does not bar this suit, then any taxpayer could come in during an audit. And when a revenue agent raises a particular issue under a certain statute, say, I'm looking at your liability on this, the taxpayer has an incentive, they can go file to enjoin to keep the revenue agent from looking at that statute. Because they think it's unconstitutional or they think they don't fit into it. Later in the audit, the revenue agent looks at another aspect of their taxes under another statute, another provision of the code. Again, the taxpayer files another suit for that. I mean, there's nothing to keep that from happening. And those helpful examples that you gave, how would you distinguish those examples from what the Supreme Court allowed in CIC? Because you're undergoing an actual audit of a tax investigation that is ongoing and it is there to determine the liability. You are at the cusp of liability in that kind of situation because that's what the IRS is trying to do is figure out your liability. Similarly, there's what's called a notice of deficiency that may go out to someone. That's where a determination has been made but has not been assessed yet and the person can go to tax court and challenge it. Presumably, if this court were to find the Anti-Injunction Act doesn't apply, a taxpayer could bring a suit to enjoin the notice of deficiency and try to get them to withdraw the notice of deficiency. Forgive me for interrupting, but it sounds like the way you distinguish those situations, the audit situations from CIC, which is the cusp of liability theory, would also distinguish this situation unless we regarded this as a cusp of liability. It would therefore not seem that our following CIC here would create any additional problems that CIC does not create. Well, Your Honor, again, I think because his tax liabilities are at issue here and the IRS has notified him that it has information saying he may owe more and that's what's at issue. He's trying to keep the IRS from using that information. He wants them to destroy it. That's what he's trying to do, to keep the IRS from being able to make that determination upon which the assessment is based. We think that's very closely related and therefore this is plainly a suit about taxes. I'm running out of time and I would say that even if this court does decide that the Anti-Injunction Act does not bar this suit, as we laid out in our brief, on the face of the complaint, none of his claims survives. They all fail as a matter of law and I would note, even though Mr. Harper was arguing in his reply brief and in the argument here that this court shouldn't decide the 12B6 issue, I would note that he requested in the opening brief that the court do that very thing at pages 2, 3, 7, 30, and 43. So I do think that it would be appropriate for this court to decide the 12B6 issue if it decides that the Anti-Injunction Act does not apply here. If the court has no further questions. Thank you, Ms. Lyon. Thank you. At this time, Attorney Lyon, please mute and Attorney Stamp, please unmute your audio and video and introduce yourself on the record to begin. Three minute rebuttal. May it please the court, this is Richard Stamp on behalf of Appellant Jim Harper. The question about who is on the cusp of liability definitely works to our favor. If anything, the appellant in CIC was very much on the cusp of liability because that taxpayer was required to provide reports and the failure to provide those reports would have almost automatically resulted in tax liability. And that was the argument of the IRS in the CIC case that this was interfering with the collection of tax. Mr. Stamp, could you address the hypothetical that Ms. Lyon gave of a taxpayer is in the middle of an audit and every time something comes up that might suggest the IRS is going to go after him for more taxes, he launches a preemptive lawsuit on that issue. How would that be distinguishable from this situation? Well, this is a third party case where Mr. Harper has never had an opportunity to go into court. If an individual taxpayer is in the middle of an audit and fears additional information might be to his detriment if it were provided, he can refuse to provide it. At that point, the IRS is required to go into court and try to enforce its summons. So that's not a situation where allowing our suit would lead to any more lawsuits. When you have an investigation directly of a taxpayer, the courts regularly already get involved. It's only in this situation involving John Doe taxpayers that he has no opportunity. Stick with the hypothetical. Suppose what comes up in the audit is the IRS is going to take a position that something is ordinary rather than capital income. And so rather than waiting because there's no assessment, he says, aha, the anti-junction act doesn't apply. So he files a preemptive suit for declaratory judgment that it is a capital gains, not ordinary income. That would be barred by the anti-injunction act because that would be an effort to try to prevent assessment of a tax. He would be objecting to a particular tax rather than to the collection of information. So you accept the proposition that the anti-injunction act can be implicated in a case where there has yet to be an actual assessment or collection? Right. If the point of the lawsuit is to directly challenge the right to an assessment, then it is barred by the anti-injunction act. In this particular case, there has been no further word from the IRS to Mr. Harper other than this form letter that it sent out to every single taxpayer on which it had received information. So we don't know that there is any kind of investigation going on whatsoever. We have no reason to believe the IRS has actually even ever looked at Mr. Harper's tax returns. And I will waive the remainder of my rebuttal time if you have no further questions. Thank you. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court.